UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| CHAUNCEY A. TODD, <br> Social Security No. XXX-XX-1039, <br> <br> Plaintiff, <br> <br> v. <br> <br> CAROLYN W. COLVIN, <br> Acting Commissioner of the Social <br> Security Administration, <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | 4:13-cv-127-SEB-WGH |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This action is before me, William G. Hussmann, Jr., United States Magistrate Judge, pursuant to Judge Barker's order. (Filing No. 9.) Plaintiff Chauncey Todd seeks judicial review of the Social Security Administration's final decision, which deemed him able to work and therefore ineligible for Disability Insurance Benefits or Supplemental Security Income. The matter is fully briefed. (Filing No. 22; Filing No. 27; Filing No. 28.) Being duly advised, I find no error in the Administrative Law Judge's opinion and therefore recommend **AFFIRMING** his decision.

I.   **Background**

In their briefs, the parties thoroughly recounted the facts underlying Todd's claim and the issues presented for review. (*See* Filing No. 22; Filing No. 27.) I revisit them here only as necessary to address the parties' arguments.

### A. Todd's Conditions and Work History

Todd suffered a brain injury during his birth that has produced a variety of cognitive impairments. Although Todd completed high school, it is not clear whether he satisfied all the graduation requirements, and he benefitted from special education courses and extensive tutoring beginning around the fourth grade. (Filing No. 17-2 at ECF pp. 81–83, 107–109; Filing No. 17-6 at ECF p. 3.) Todd also experiences chronic back pain due to degenerative disc disease, compression fractures in his thoracic spine, and obesity, and he recently tore and fractured parts of his left knee when he slipped in mud and fell. (*See* Filing No. 17-2 at ECF p. 13.)

Todd, who now is 28 years old, most recently worked for 21 months as a grocery stockman. (Filing No. 17-5 at ECF p. 32; Filing No. 17-6 at ECF p. 15.) Todd's employer refused to accommodate his doctor's instruction that he could work in shifts of no longer than five hours and terminated his employment in January of 2013. (Filing No. 17-2 at ECF pp. 73–74.) Previously, Todd worked for four months as a machine operator and for 34 months as a laborer at two different factories. (Filing No. 17-6 at ECF pp. 15–16.) Todd has testified that he was laid off from both jobs without any explanation. (*Id.*)

### B. Todd's Burden of Proof and the ALJ's Five-Step Inquiry

In order to qualify for benefits, Todd must establish that he suffered from a disability as defined by the Social Security Act. A disability is an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To establish a disability, a claimant must present medical evidence of an impairment resulting "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908.

An ALJ must perform a sequential, five-step inquiry to determine whether a claimant is disabled:

(1) Was the claimant unemployed at the time of the hearing?

(2) Does the claimant suffer from a severe impairment or a severe combination of impairments?

(3) Are any of the claimant's impairments—individually or combined—so severe that the Social Security regulations have listed them as necessarily precluding the claimant from engaging in substantial gainful activity?

(4) Does the claimant lack residual functional capacity ("RFC") to perform his past relevant work?

(5) Does the claimant lack RFC to perform any other work existing in significant numbers in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4).

The claimant is disabled only if the ALJ answers "yes" to all five questions. *See Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). An answer of "no" to any question ends the inquiry immediately and precludes the claimant from eligibility for benefits. *Id.* The claimant bears the burden of

proof at Steps One through Four. *Id.* If the claimant succeeds, the Commissioner bears the burden at Step Five of proving that the claimant is not disabled. *Id.*

### C. The ALJ's Findings

At Step One, the ALJ found that Todd had not engaged in substantial gainful activity since his alleged onset date. (Filing No. 17-2 at ECF pp. 12–13.) At Step Two, the ALJ found that Todd was severely impaired by:

- borderline IQ and learning disability (including poor memory);
- low back degenerative disc disease;
- thoracic compression fractures;
- obesity; and
- "left knee fracture, tear".

(*Id.* at ECF p. 13.) The ALJ found that Todd also was impaired—although not severely—by hypertension. (*Id.* at ECF p. 14.)

At Step Three, the ALJ found that none of Todd's impairments—individually or combined—met or medically equaled the severity of a listed impairment. (*Id.* at ECF pp. 14–21.) The ALJ explained that he gave specific attention to Listings 12.02 (organic mental disorders) and 12.05 (mental retardation). (*Id.* (applying 20 C.F.R. § 404, Subp't P, App'x 1).)

Before proceeding to Step Four, the ALJ found that Todd retained the RFC necessary to perform "a full range of sedentary work" with some exceptions. (Filing No. 17-2 at ECF p. 21.) The ALJ found that Todd:

- "cannot understand, remember, and carry out" job instructions that are either detailed or complex;

4

- cannot perform "complex or abstract work"; and
- "can seldom climb, balance, stoop, crouch, kneel, or crawl."

The ALJ also found that Todd could work only at jobs that:

- are "routine and repetitive, and . . . far enough from others to reduce distractions";
- do "not require intense focused attention until the next scheduled break";
- "have no assembly line type of work which forces an inflexible pace";
- do not "change frequently";
- are "inherently not highly stressful"; and
- do not require "higher levels of" math and reading skills.

Finally, the ALJ found that any job Todd works must allow him to:

- "miss an average of one day per month from work to be home to take care of his ailments";
- "go sit down or lie down out of the way at lunchtime only, prop feet up, but the employer does not have to affirmatively supply anything; just leave him alone to do his own thing as best he can with the facilities on hand at lunchtime";
- "alternate sit/stand at will," "stand and stretch brief [sic] frequently," or "have a significant amount of work done standing up"; and
- stay out of "any unusually damp or unusually cold environment."

The ALJ found at Step Four that Todd's RFC would not allow him to perform any past relevant work. (*Id.* at ECF p. 44.) At Step Five, the ALJ accepted a vocational expert's testimony that Todd's RFC would allow him to perform such sedentary, unskilled jobs as laminator and industrial mechanical

5

coater and found that those jobs existed in significant numbers in the national economy. (*Id.* at ECF pp. 45–46.)

### D. The Disputed Medical Opinions

As the basis for this appeal, Todd alleges that the ALJ erred by failing to accord proper weight to four doctors' medical opinions. I summarize each opinion and the ALJ's response below.

#### 1. Dr. Doss's Weight and Hour Restrictions

On December 12, 2011, Dr. Kimathi Doss, a neurosurgeon, examined Todd on referral from Dr. Michael Cronen. (Filing No. 17-8 at ECF pp. 62–76.) Dr. Doss's treatment notes principally recount Todd's symptoms and medical history as Todd described them and suggest that back surgery—"a small laminotomy with a microdiscectomy"—might provide some relief but would be risky. (*Id.* at ECF pp. 62–63.) Dr. Doss also wrote a "return-to-work" note instructing that Todd was not to lift more than 20 pounds or work a shift longer than five hours. (*Id.* at ECF p. 73.) As Dr. Doss noted, Todd then was working as a grocery stockman and therefore was subject to "a lot of heavy lifting and repetitive motion." (*Id.* at ECF p. 62.)

The ALJ found that Dr. Doss's weight and hour restrictions were intrinsically tied to the work he was performing at the supermarket and would not be necessary to enable him to work sedentary jobs. (Filing No. 17-2 at ECF pp. 38–39.) Thus, the ALJ assigned Dr. Doss's opinion "little weight." (*Id.* at ECF p. 39.)

6

## 2. Dr. Nutter's Opinion of Permanent Disability

Dr. Laura Nutter treated Todd as his general physician from at least August of 2011 until January of 2013. (Filing No. 17-8 at ECF pp. 78–88; Filing No. 17-9 at ECF pp. 73, 75; Filing No. 17-13 at ECF pp. 62–65.) On December 21, 2011, Dr. Nutter indicated that she agreed with Dr. Doss's suggested weight and hour restrictions and that she thought they should remain in effect indefinitely. (Filing No. 17-8 at ECF p. 79.) As discussed in Section I(D)(1) above, the ALJ assigned the weight and hour restrictions little weight, finding that Todd could complete sedentary work without them. (Filing No. 17-2 at ECF pp. 38–39.)

On July 18, 2012, while Todd apparently was recovering from an injury, Dr. Nutter opined that returning to his grocery stockman job two weeks later as scheduled would be "inappropriate and would risk re-injury." (Filing No. 17-9 at ECF p. 73.) The ALJ found that opinion supported by the evidence but nevertheless consistent with his finding that Todd could complete sedentary work. (Filing No. 17-2 at ECF p. 41.)

Two months later, Dr. Nutter opined that Todd "is permanently unable to hold meaningful employment." (Filing No. 17-9 at ECF p. 75.) She reasoned that any physical labor would "repeatedly strain and re-injure" Todd and that he would be incapable of "more cognitive employment" due to his learning disability. (Id. at ECF p. 75.) The ALJ assigned this opinion "little weight," finding that it was "not supported by the substantial medical evidence of record. (Filing No. 17-2 at ECF p. 41.) The ALJ explained that Dr. Nutter had

opined less than a year earlier that Todd could work with some restrictions and that she had not cited "any supporting objective evidence to substantiate a worsening of [Todd]'s abilities." (*Id.*) The ALJ added that he discounted Dr. Nutter's opinion because it was inconsistent with the hearing testimony of Howard Caston, a vocational expert, and because it amounted to an assertion that Todd was disabled—a judgment reserved by law for the Commissioner. (*Id.*)

### 3. Dr. Cecil's Recommendation of Supported Employment Services

Dr. Michael Cecil, a clinical neuropsychologist, performed a comprehensive psychological evaluation of Todd on June 30, 2012. (Filing No. 17-8 at ECF pp. 8–10.) Dr. Cecil found that Todd "presents with borderline impaired intellectual functions as well as extremely low academic achievement skills suggesting severe functional brain impairment." (*Id.* at ECF p. 10.) He diagnosed Todd with a global assessment of functioning score of 30, suggesting Todd's behavior was "considerably influenced by . . . serious impairment in communication or judgment" or "inability to function in almost all areas." *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. text revision 2000) (*DSM-IV-TR)* (*applied in Id.* at ECF p. 11.)

In light of his impairments, Dr. Cecil suggested that any new professional training would be inappropriate for Todd and recommended "supported employment services" for Todd. (*Id.* at ECF pp. 10–11.) "Without significant supports," Dr. Cecil explained, "I do not anticipate he will be able to obtain and maintain employment over time." (*Id.*)

8

The ALJ rejected Dr. Cecil's opinions as "extreme and inconsistent with the substantial medical evidence of record." (Filing No. 17-2 at ECF p. 32.) The ALJ found that Todd's work history, daily activities, and medical records indicated less extreme limitations than Dr. Cecil suggested. (*Id.* at ECF pp. 32–33.) Moreover, he explained that Todd's work history indicated he could work independently. (*Id.*) Finally, the ALJ accepted the vocational expert's testimony that "supported employment" programs are designed to train a worker for independent, competitive employment and that Todd appeared capable outside a supported environment. (*Id.* at ECF p. 28.)

### 4. Dr. Akaydin's Recommendation of a Well-Supervised Workplace Environment

On December 6, 2010, Dr. Mehmet Akaydin performed a comprehensive physical examination of Todd. (Filing No. 17-8 at ECF pp. 12–15.) Dr. Akaydin spoke well of Todd and found him "quite capable of performing most forms of at least mildly to moderately physically strenuous work without any overt difficulty pending appropriate training/instruction and motivation/encouragement to do so." (*Id.* at ECF p. 15.) Dr. Akaydin also opined that Todd "would probably benefit from a well-supervised workplace environment at least initially." (*Id.*)

The ALJ rejected Dr. Akaydin's opinion to the extent it would limit Todd's employability to well-supervised workplace environments. (Filing No. 17-2 at ECF p. 34.) As with Dr. Cecil's opinion, the ALJ found that Todd's work history, daily activities, and medical records suggested he could work independently. (Filing No. 17-2 at ECF pp. 33–34.)

9

## II. Standard of Review

The Court must affirm the ALJ's decision unless it is unsupported by substantial evidence or based on a legal error. *E.g.*, *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g). The ALJ—not the Court—has discretion to weigh the evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. *Richardson v. Perales*, 402 U.S. 389, 399–400 (1971). Accordingly, the Court may not re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

Even where the ALJ has based his decision on a legal error, the Court may not remand the action if the error was harmless. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). The harmless error standard does not allow the ALJ's decision to stand just because it is otherwise supported by substantial evidence. *E.g.*, *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Substantial-evidence review ensures that the Administration has fulfilled its statutory duty to "articulate reasoned grounds of decision." *Spiva*, 628 F.3d at 353. In contrast, review for legal errors "ensure[s] that the first-line tribunal is not making serious mistakes or omissions." *Walters v. Astrue*, 444 Fed. App'x 913, 919 (7th Cir. 2011) (non-precedential order) (citing *Spiva*, 628 F.3d at 353). Therefore, an error is harmless only if the Court determines "with great confidence" that remand would be pointless because no reasonable trier of fact could reach a conclusion different from the ALJ's. *McKinzey*, 641 F.3d at 892; *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

10

**III. Analysis**

Todd argues that the ALJ erred by granting too little weight to Dr. Doss's and Dr. Nutter's opinions given their stations as treating medical sources under the Social Security regulations. Todd also argues that the ALJ erred by rejecting Dr. Cecil's and Dr. Akaydin's opinions as examining sources. For the following reasons, I find that, if the ALJ erred at all, his error was harmless.

**A. If the ALJ erred by assigning little weight to Dr. Doss's weight and hour restrictions, the error was harmless.**

Todd first argues that the ALJ erred by assigning too little weight to Dr. Doss's "return-to-work" note instructing that Todd was not to lift more than 20 pounds or work a shift longer than five hours.

Ordinarily, an ALJ must grant a treating[1] source's medical opinion "controlling weight." 20 C.F.R. § 404.1527(c)(2). Otherwise, the ALJ must explain why the treating source's opinion deserved less weight in light of six factors:

- the length, nature, and extent of the treatment relationship;
- the extent to which the source supports her opinion with explanations;
- the opinion's consistency with the record as a whole;
- whether the source has rendered an opinion in her area of specialty; and
- other factors, such as the source's familiarity with disability proceedings and the other evidence in the record.

---

[1] Although the Record indicates that Dr. Doss saw Todd on only one occasion (Filing No. 17-8 at ECF pp. 62–76), I assume for the sake of argument that Dr. Doss was a treating source.

11

20 C.F.R. § 404.1527(c)(2)–(6).  The Seventh Circuit requires that an ALJ give "good reasons" for according less than controlling weight to a treating source's opinion.  *E.g., Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

The ALJ explicitly explained that he discounted Dr. Doss's opinion because he read it as specific to Todd's work at the time the note was written—stocking groceries.  (Filing No. 17-2 at ECF pp. 38–39.)  This is a "good reason" from a logical perspective.  Dr. Doss expressed his opinion in the form of a "return-to-work" note.  A <u>return</u>-to-work note implicitly reflects the author's judgment about the subject's fitness to <u>return</u> to the particular work he already had been doing—not his fitness to <u>begin</u> different work.  Consequently, the ALJ could rationally conclude that whatever restrictions Dr. Doss found necessary to enable Todd to perform a physically demanding job would not be necessary to enable Todd to perform a less demanding, sedentary job.

Although the ALJ failed to explicitly address any of the § 404.1527(c) factors in explaining that conclusion, any error was harmless.  The ALJ did not quibble with the restrictions in the return-to-work note; he found that they would not apply in a less strenuous setting.  No fact that would strengthen Dr. Doss's opinion in the § 404.1527(c) analysis would detract from that conclusion.  For example, suppose that Dr. Doss had treated Todd over the course of one thousand appointments, or that every piece of evidence in the record supported the weight and hour restrictions.  Those facts would merely strengthen a conclusion the ALJ did not assail; they would not heighten that conclusion's application to the ALJ's inquiry into Todd's ability to perform less

12

demanding sedentary work. I therefore conclude with great confidence that the ALJ would assign Dr. Doss's opinion little weight on remand and find that any error on this point was harmless.

### B. The ALJ did not err by assigning less than controlling weight to Dr. Nutter's opinions.

Todd next takes issue with the ALJ's treatment of three opinions from Dr. Nutter: that Dr. Doss's weight and hour restrictions were sound and should apply indefinitely, that Todd was not fit to return to his stockman position as of August 1, 2012, and that Todd is permanently unable to work in any competitive employment.

Todd's argument concerning Dr. Nutter's endorsement of Dr. Doss's weight and hour restrictions fails for the same reasons set forth in Section III(A) above. Although Dr. Nutter opined that those restrictions should apply indefinitely, the ALJ was entitled to read Dr. Doss's opinion and Dr. Nutter's endorsement of it as applying only to Todd's work as a grocery stockman. To whatever extent the ALJ erred by assigning Dr. Nutter's opinion less than controlling weight as he considered Todd's ability to perform sedentary work, such error was harmless.

The ALJ also appropriately treated Dr. Nutter's opinion that Todd could not return to his stockman position on August 1, 2012. In fact, the ALJ agreed with that opinion. (Filing No. 17-2 at ECF p. 41.) Again, the ALJ was entitled to find that Dr. Nutter's opinion that Todd could not return to his "previous employment" was specifically directed to Todd's work at the supermarket. The

13

ALJ fully embraced Dr. Nutter's opinion, finding that Todd was incapable of performing that work. (*See id.* at ECF p. 44.)

The ALJ accorded Dr. Nutter's opinion that Todd is permanently unable to engage in meaningful employment "little weight" because he found it

> not supported by the substantial medical evidence of record. Specifically, Dr. Nutter leaps from providing physical restrictions of no lifting over twenty pounds or working over five hour shifts on December 21, 2011, to opining that claimant is permanently unable to hold meaningful employment without any supporting objective evidence to substantiate a worsening of claimant's abilities ([Filing No. 17-2 at ECF p. 79]). Moreover, whether claimant is disabled is a finding reserved for the Commissioner [ . . . ].

(Filing No. 17-2 at ECF p. 41 (citing 20 C.F.R. §§ 404.1527(d), 416.927(d); Social Security Ruling 96-5p)[2].)

The ALJ was not obligated to accept Dr. Nutter's opinion; he was free to discount it for a good reason. *E.g., Scott,* 647 F.3d at 739. Here, the ALJ offered two. First, Dr. Nutter found that Todd was completely unable to work only nine months after she found he was able to work in five hour shifts so long as he did not have to lift more than 20 pounds, and she failed to explain what changed her mind. (Filing No. 17-2 at ECF p. 41.) Second, the ALJ noted that Dr. Nutter's opinion did not address Todd's medical condition, but the ultimate legal decision in the case—a judgment reserved for the Commissioner. (*Id.* (applying 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that

---

[2] The ALJ's citations to the Code of Federal Regulations reflect the Code's enumeration before it was revised in February of 2012. All citations in this Report and Recommendation reflect the Code's enumeration as of this writing.

14

you are disabled")).)  These reasons are grounded in Dr. Nutter's opinion's inconsistency with the record as a whole and her failure to support her opinion with sound reasoning.  *See* 20 C.F.R. § 404.1527(c)(3)–(4).

True, Todd appears to have injured his knee between the time Dr. Nutter endorsed Dr. Doss's weight and hour restrictions and the time she found Todd completely disabled.  (Filing No. 17-9 at ECF pp. 2–19.)  But Dr. Nutter's opinion suggests that Todd was limited by back pain and a mental impairment.  (*Id.* at ECF p. 75.)  So far as I can tell, none of Dr. Nutter's records address Todd's knee.

Moreover, Todd has not identified any evidence that would support Dr. Nutter's opinion that he is unable to work.  Todd argues that her opinion is supported by the three other medical opinions at issue here, but I disagree.  As I explained above, Dr. Doss's weight and hour restrictions appear to have applied (and certainly the ALJ was entitled to perceive that they applied) just to Todd's work as a stockman.  Dr. Cecil's finding that Todd could work only in supportive environments does not mean he could not work at all.  And the same goes for Dr. Akaydin's finding that Todd would benefit from a well-supervised workplace environment.  Indeed, Dr. Akaydin also opined that Todd was "quite capable of performing most forms of at least mildly to moderately physically strenuous work."  (Filing No. 17-8 at ECF p. 15.)  None of these opinions commands a conclusion that Todd was totally and permanently disabled.

15

Therefore, because the ALJ articulated a sound basis—consistent with his statutorily imposed analysis—for discounting Dr. Nutter's opinions, I find that he did not err by granting them less than controlling weight.

**C. If the ALJ erred by assigning little weight to Dr. Cecil's opinion, the error was harmless.**

Todd next argues that the ALJ erred by rejecting Dr. Cecil's opinion that Todd should be limited to supported employment and assigning greater weight to other, non-examining sources' opinions. An ALJ ordinarily should assign greater weight to an examining source's opinion than he assigns to a non-examining source's opinion. 20 C.F.R. § 404.1527(c)(1). But, as with treating sources, an ALJ may reject an examining source's opinion in favor of a non-examining source's opinion so long as he explains his decision after considering five factors:

- the length and frequency of the examination(s);
- the extent to which the source supports her opinion with explanations;
- the opinion's consistency with the record as a whole;
- whether the source has rendered an opinion in her area of specialty; and
- other factors, such as the source's familiarity with disability proceedings and the other evidence in the record.

20 C.F.R. § 404.1527(c)(1), (3)–(6).

The ALJ did not err in rejecting Dr. Cecil's opinions. He thoroughly explained why he found Dr. Cecil's opinion inconsistent with the balance of the

Record, specifically citing contradictory evidence. ([Filing No. 17-2 at ECF pp. 32–33](#); *see* [20 C.F.R. § 404.1527(c)(4)](#).

And, if the ALJ did err, his error was harmless. The ALJ accepted the vocational expert's testimony that Todd could engage in competitive employment through a supportive employment program and that supportive employment would not make it more difficult for Todd to find work.[3] ([Filing No. 17-2 at ECF pp. 28](#), [99–100](#).) And, in any event, the ALJ would be entitled to discard Dr. Cecil's opinion as a non-medical opinion on Todd's ability to work— a question reserved for the Commissioner. *See* [20 C.F.R. § 404.1527(d)(1)](#). Therefore, I conclude with great confidence that the ALJ would reach the same conclusion if I remanded this matter with instructions to assign greater weight to Dr. Cecil's opinion.

### D. If the ALJ erred by assigning little weight to Dr. Akaydin's opinion, the error was harmless.

Finally, Todd argues that the ALJ erred by rejecting Dr. Akaydin's opinion to the extent it found that Todd could only work in a well-supervised workplace. This argument also fails.

Again, the ALJ provided a thorough and reasoned explanation for finding that Todd could work independently. (*See* [Filing No. 17-2 at ECF p. 34](#).) As the ALJ noted, Todd testified himself that he worked productively for over two years in a factory with minimal assistance from a friend. ([*Id.* at ECF pp. 113–14](#).)

---

[3] Because Dr. Cecil did not elaborate on what he meant by "supportive employment services," I find no error in the ALJ's acceptance of the vocational expert's characterization of supportive employment services.

And any error would once again be harmless. Simply put, Dr. Akaydin's opinion is not necessarily inconsistent with the ALJ's conclusion. Opining that a person would benefit from a well-supervised environment is different from opining that he could not work in any other environment. And, even if Dr. Akaydin had opined that Todd could not work outside a well-supervised environment, the ALJ would be entitled to discredit that opinion as a non-medical opinion on an issue reserved for the Commissioner. *See* [20 C.F.R. § 404.1527(d)(1).](#) Therefore, I find with great confidence that the ALJ would reach the same conclusion if I remanded this action with instructions to give greater weight to Dr. Akaydin's opinion.

## IV.   Conclusion

For the foregoing reasons, I recommend that the Court **AFFIRM** the ALJ's decision.

Any objections to this Report and Recommendation must be filed with the Clerk in accordance with [28 U.S.C. § 636(b)(1)](#). Failure to file timely objections within 14 days after service will constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 14th day of August, 2014.

_____
William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Served electronically on all ECF-registered counsel of record.**